And we'll hear argument in the case of United States v. Scotford Good morning, your honors. Carolyn Wiggin from the Federal Defender's Office in Sacramento on behalf of Mr. Scotford And I will try to save a few minutes for rebuttal if I can I'd like to begin this morning by discussing the 28-J letter that Mr. McConkie sent on Monday That cited to the case United States v. Lindsay This is a 1979 Ninth Circuit case And it has to do with starting a campfire on land right next to federal forest land In this sense, I think it is consistent with the Arbo decision which both parties discussed in their briefs And that had to do with inspection of a facility to look at things like sanitation and fire prevention On that land that was next to federal forest land And I think both of these cases flow directly from a 1926 Supreme Court decision, United States v. Alford That talked about regulation of land that is right next to federal forest land And whether the Federal Property Clause would cover that activity And the language in Alford says Congress may prohibit the doing of acts upon privately owned lands that imperil the publicly owned forests So all three of these cases have to do with campfires or fire prevention And you can easily see how that activity directly imperils the adjacent federal land And today, Mr. McConkie brought the Wilfong case to court I believe everyone got a copy of it And I suppose the reason for that was to say that somehow this supports the argument That following a snowmobiler on private land can be categorized as falling within protection of the federal forest But the place he was driving, the way he was driving, and his prior history Would suggest that he may well be going onto federal land And indeed, he did go onto federal land, didn't he? He did, did he not? Yes, he did He didn't stay off federal land, he got himself over on federal land, true? True So what's wrong with the Forest Service? Some guy is going along right on the border of federal land And they know this guy has gone on federal land before And they just want to come up and say Look, we want to let you know that you can't go onto the closed part of federal land This is a real problem And we just want to stop that What's wrong with that? That seems to me an appropriate thing for an enforcement agent to do Do I have to wait until you shoot me before I take action? Well, there's certainly no problem with surveillance of that person on private land And there's no problem with a stop order when they cross into the federal forest land But to the extent that they're lawfully driving their snowmobile on federal forest land I don't think a failure to obey a stop order Which we also have a separate dispute with whether there was a clear stop order that was disobeyed Well, that's like talking about terror, you know You think, well, to the extent the person is just walking back and forth in front of a window They don't have to stop You can't detain them for that And yet the Supreme Court said, sure you can It doesn't mean that what you're doing is perfectly legal The question is whether it looks like there might be a problem, right? Well, I think that's the Terry case you're referring to And that's a bit different than imposing criminal liability for the failure to stop I mean, in the Terry case, it's clear someone could walk away Well, you can walk away from a normal talk-talk But you can't walk away from a Terry stop That's what Terry stops are, they're detentions You can't just walk away from a Terry stop, can you? This officer, in order for there to be criminal liability for the failure to stop The officer has to be somehow carrying out an official duty to protect federal land Here, all the orders came to the snowmobiler while he was on private land And yet Well, then he did go onto federal land, didn't he? He still didn't stop, did he? He did go onto federal land, and he still didn't stop, did he? The orders were not given at the time He was briefly, briefly arcing in, barely to a border of federal land And then going right back onto private land Well, once he crossed the barrier, then what difference does it make? The officer had a perfect right to stop him once he trespassed onto federal land, right? Well, but here the orders, week and 10, were not given Were not given at the time, or for a violation of going into the federal forest land They were given Well, let's assume that you're right on that That right up until the point he went onto federal forest land The officer told him to stop, and he said, I'm not going to obey the officer He's not on forest land Once he goes on forest land, comes back, and the officer tells him to stop Doesn't that change under your theory of the case? Doesn't that give the officer sufficient reason to stop him? Well, Your Honor, I think there still has to be a tie to Under the particular regulation we're talking about It has to do with interfering with a forest officer in the protection of federal forest land And I think that once the person, if they are just barely touching the border And then they go back into private land You know, barely touching the border, where's that in the evidence? He crossed over, he passed a sign that said, don't enter, no trespassing Went right by it Well, I think the evidence What barely touching in would make a difference? I believe the evidence is that there was a point where he drove past a sign that said Federal forest land, had a big sign, no snowmobilers But that wasn't the point where he crossed the border He did drive by that sign, but while he was on private land Later, we don't dispute the evidence that he did make a small dip into the border And then, again, drive around on private land and make another small dip into a border And your client didn't testify, right? Pardon me? Your client did not testify No, he did not Okay So, as we look at the evidence in the light most favorable to the government As we must at this stage, because you're making a sufficiency argument Why wasn't the officer entitled to give him an order to stop after he crossed into federal land Even if he just dipped his toe over or his runner over? Well, our contention is that once he was back on the private land And in fact, if you look at a charge on which our client was acquitted Which was damaging federal forest land The magistrate judge and his decision was adopted by the district judge said Not only was there no evidence that this person harmed federal forest land But there was no evidence that this activity in general harms federal forest land What difference does that make? Pardon me? What difference does that make? If I walk onto federal forest land and I'm not doing any damage I just walk, I'm on federal forest land You're telling me that the federal agents can't come up to me and say Hey, we want you to know if you take three more steps, you'll be in a closed area They can't do that? In your view? Well, to impose criminal liability on you for ignoring that Would you answer that question? You say they can't do that, right? I can say, nuts, I'm not going to pay any attention to you They say, Mr. X, I want you to stop so I can explain the rules of the forest to you And I just keep walking, I'm not going to pay attention to you I'm a free citizen, I don't have to listen to the federal You're telling me that they're not permitted to tell me to stop then? They are permitted and you are certainly permitted And you can certainly consensually stop and talk to them, which I think most people do Let me put it a different way They can't stop me then and say you're on federal forest land trespassing It's not your land, Mr. So-and-so You're on federal forest land They can't come up to me and talk to me and tell me to stop while they talk to me? When you're on the federal forest land, yes But when you're on the private land, in order for you to be guilty of interfering with a federal officer Who is engaged in the protection and administration of the federal forest There has to be some nexus And I think Alfred and Arbo and Lindsay all say that There has to be some nexus between what they're doing and actually protecting the federal forest land Now what do they happen to know? I'm Mr. X and they happen to know that I just march into that land all the time No matter what anybody says, I march in when I feel like it I just march in and they see me at this moment I haven't taken the step across the border yet But I'm walking along there And they just know that it's common for me to just march on across I don't care They can't stop me when I'm walking along the border They have to wait until I take that step That's your position, I take it That's our argument I got you, I understand It's much like arguing, let's say that you have a county sheriff And the county sheriff is following a car outside the county And you say, well I don't have to stop, that's from another county, it's outside his jurisdiction Then you dip back in to the county's jurisdiction and speed Your argument is that the sheriff then doesn't have the authority to stop you for speeding within the county Right? Well, I want to make sure that I'm not How can that make any sense? There are hot pursuit cases where, and I suppose I should have mentioned that in response to the arguments about after you leave If there's a hot pursuit, then you can go after someone as they cross those borderlands But, and I have not boned up on the actual authority of county sheriffs on cross county stops But what I do think I was just throwing out a hypothetical Right But I think it works, I think it's a valid hypothetical What you seem to be saying is that forest service officers can't arrest people outside of the federal forest And they do that all the time, they give citations all the time Well I think if they can commit the crime on the forest land, pursue them off the forest land, then yes they can do that But if it's purely an activity on private land and there's no way in which that activity has been shown to be imperiling the federal forest land Then to hold you criminally liable for failing to obey that order Again, it's not just the matter of was the stop legal for purposes of suppression of evidence But are you criminally liable for not stopping? There has to be some tie between your failure to stop and the officer's protection and administration of the federal forest Do you want to save some time for a bottle? Yes, thank you Good morning your honors, may it please the court My name is Daniel McConkie and I represent the United States I'd like to briefly respond to Ms. Wiggins' arguments about the 28J letter I cited to the court United States v. Lindsay I note that in that case the defendant suffered two convictions, not just for the campfire but also simply for camping The property clause of the Constitution which the Supreme Court has consistently read broadly I'd like to talk about the question which came up before about whether the officer had proper authority to stop the defendant First of all, even before the defendant goes out of bounds The property clause of the Constitution gives the officer authority to make a regulatory stop And indeed in this case the record bears out that what the officer was trying to do was warn the defendant of a closure And second of all, the question comes up, does this analogize to a Terry stop or Fourth Amendment law? I think just to be clear, any Fourth Amendment argument has been waived at this point Rule 12 of the Federal Rules of Criminal Procedure requires that it would have been brought below before trial and it was not It's never been litigated below Well, he didn't stop Well, that's the other thing. It's California v. Hodari So it's kind of hard to fault them for making a search and seizure argument when nobody was stopped or seized or questioned, right? Without a Fourth Amendment seizure, I'm not concerned about the Fourth Amendment implications of the case The Terry comment was just an analogy? Sure Well, let me ask a different question if you don't mind changing topics I guess I'm interested in the mens rea argument I don't quite follow why this isn't a crime that requires intent I'm talking now about the crime of going onto forest property off-road Yes Your Honor, in two cases the Ninth Circuit has held, specifically regarding Part 261 of 36 CFR, that mens rea is not required regarding forest regulations And I'm referring to Kent, where somebody was occupying forest land, no mens rea as to whether they knew they were on forest land And then Wilson, cutting timber on forest land, no mens rea as to whether they knew they were on forest land I urge the Court to adopt the reasoning of Wilson, which is that in the often poorly marked boundaries of a national forest, it might Requiring the government to prove mens rea as to where a person is in the forest might make the regulatory scheme difficult, excessively difficult to enforce Especially whereas here in this case, Officer Thompson testified that he gave out maps to people at every contact That he had given out maps to this defendant, that signs are posted as often as possible in the national forest That these signs are often removed by people in the national forest Right, but I don't want to get into the facts of this case at this stage, because I'm just concerned about the general concept But here we have a regulation that says, well, under the scheme, you're allowed to go off-road in the national forest Unless there's an order designating off-limits, right? I don't agree with that characterization, and I'll point to the Court to page 47 of the SCR The Court can see that large swaths of the national forest are forbidden to snowmobiling It is a highly regulated activity I don't think it's accurate to say that it's legal to snowmobile everywhere unless you can't snowmobile in a certain place But don't the regulations say, and I'm looking at 26, I'm sorry, 261.56, that it's prohibited only when provided by an order? Yes Okay, so how do we know? How is a person to know when the order is effective? Is it sufficient to provide constitutional notice of violation? Regarding snowmobiling in a national forest, I believe that it's fair to require people to know where they are A person riding a snowmobile must know whether he's on private land or public land Our society's general notion of property rights make it completely reasonable under the test set forth in Morissette and Staples to know that they are showing inattention or neglect to a duty which is reasonably imposed upon them by our society Well, I mean, basically you're arguing this is a strict liability crime and yet really it's a situation where somebody has to make affirmative efforts to figure out whether or not they're violating the boundary because it's allowed except where there's a specific order So it's not one of those situations where you say, oh, I know I can't snowmobile on forest land In fact, you can. It depends on what order is effective at the time So why isn't a mens rea requirement appropriate? What about section 161.15 that says it is prohibited to operate any vehicle on national forest systems, states, and roads? And then it goes on, you know, without a valid license, without this Doesn't that cover the situation? Yes, I agree that it does, Your Honor I think that regardless of how we characterize whether it's negative, positive, positive, negative, generally allowed, generally not allowed what we have here is a very highly regulated activity of a motor vehicle coming into conflict with an environmental regulatory scheme here to protect endangered plants and to prevent the disruption of deer migration I think the confluence of those two factors make mens rea, in this narrow, limited sense of the law I think it's appropriate what the Ninth Circuit has done in Wilson and Kent and this Court should extend that reasoning here Right. I don't think the regulations cited by Judge Hall I don't have a problem with I'm talking about 261.56, which is a different regulation I don't want to quarrel with you, but it's a fairly significant issue in my neck of the woods, as we say and it's not one we make casually Your Honor, I agree it's a significant issue The general rule, as this Court is well aware, is that there should be a mens rea requirement in every crime but there are a set of factors set forth by the Supreme Court and I believe that this case satisfies those factors If the panel has no further questions, I would urge the panel to affirm the decision below and to follow its reasoning set forth in the Ninth Circuit precedent of Kent and Wilson Thank you. Thank you for your argument, counsel. Thank you. And I'm glad we've moved to the topic of mens rea. I just want to say one last thing about the stop issue and that is I don't want it to be lost in the legal argument that we do also have an argument that there was some ambiguity in the officer's orders in that he was saying stop, go home, get out of here and so it wasn't clear that he was saying stop, remain at a stop and we have evidence that, in fact, the snowmobiler did stop and then when the officer approached him, he took off again. It's unpleasant to tell anyone he thought of it, as you may recall. I'll let the record speak for itself on that. Now, on to mens rea, I want to talk about Kent's... I mean, when you're raising the middle finger, I think that indicates that he knew that the officer wanted him to stop and he wasn't going to stop. I mean, you have to be fair with that. Well, I still think that, in general, that the order was a little bit... It could have been clearer. Anyway, going on to the mens rea subject, I think both Wilson, which has to do with cutting down trees, and Kent, which has to do with setting up a residence in federal forest land, and I think in those cases, what you have is a regulation with a very general prescription against two activities, tree cutting in the federal forest land and setting up a residence that are prohibited, except where permitted by a special permit. And that's, I think that's a reasonable type of regulation in which to excuse the mens rea requirement because it is generally known by the public that I can't go in and take the government's lumber, I can't set up my own house in a federal forest. But how is that different from the regulation here that says it is prohibited to go onto these forest lands unless? How is that different? Well, I believe what Mr. Scottford was actually convicted of was regulations that have to do with... Well, I would say generally snowmobiling is allowed on federal forest land, and generally there's a long history of many commercial and recreational activities being allowed. But with authority, with permits? I believe... You can't just go in and snowmobile anywhere in Yellowstone Park. You know that. Well, the Unser case, and I believe probably a national park case, would have to do with regulations that say this Unser dealt with federal forest wilderness land, which is much more protected as is national park land. And generally, yes, there is no operation of motorized vehicles unless you have a permit. Federal forest land, which is what my client was on, and the regulation under which he was convicted, generally it's allowed except where prohibited by special order. And that's what's at issue in this case, is one of those except where type of regulations. But even if we credit your argument, how do you get around the fact that he drove past a sign that said this is prohibited? Well, I think if you look at his route, which the map of it is included in the supplemental excerpts of record, he did drive past a sign, but he didn't cross at that point. What he did was he was on this high meadows road, and as soon as that started getting into protected land, he made a turn off the road to avoid protected land. And if you look at his route, it did dip a couple times into protected land, but almost the only logic to it is that he's trying to avoid getting on protected land. Did he accidentally dip onto it a couple times? We don't dispute that, but certainly it appears that what he was trying desperately to do was, yes, he was playing a doing a wild goose chase with this officer, but he was also trying as hard as he could to stay on private land. Okay. Thank you, counsel. Thank you. The case has served, will be submitted, and will be in recess for the morning. Alive? No. Is this court in recess?
judges: Hall, Fernandez, Thomas